IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LARRY GORE, | ) | CASE NO. 1:15-CV-02581 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF | ) | THOMAS M. PARKER |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| | ) | |

## I.    Introduction

Plaintiff, Larry Gore ("Gore"), seeks judicial review of the final decision of the

Commissioner of Social Security denying his application for Supplemental Security Income

benefits under Title XVI of the Social Security Act ("Act").  This matter is before the court

pursuant to 42 U.S.C. §1383(c)(3), 42 U.S.C. §405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the

Commissioner be AFFIRMED.

## II.    Procedural History

Gore applied for SSI on June 18, 2012,[1] alleging a disability onset date of June 8, 2012.

(Tr. 158-163, 227-229)  Gore's application was denied initially on October 10, 2012, (Tr. 101-

103) and after reconsideration on February 1, 2013.  (Tr. 108-109)  On February 15, 2013, Gore

requested an administrative hearing.  (Tr. 110-112)

The administrative hearing took place before Administrative Law Judge (ALJ) Penny

---

[1] The transcript also includes two previously filed applications for SSI.  One filed August 5, 2009, and one filed November 29, 2011, both alleging a disability onset date of July 1, 2008.  (Tr. 149-157)

Loucas on May 22, 2014.  (Tr. 26-51)  In her August 1, 2014, decision the ALJ determined that

Gore was disabled.  (Tr. 8-25)  On October 30, 2015, the Appeals Council denied review,

rendering the ALJ's August 1, 2014, decision the final decision of the Commissioner (Tr. 1-5).

## III.    Evidence

### A.    Personal, Educational and Vocational Evidence

Mr. Gore was born on July 10, 1986, and was 25 years old on the date his application was

filed.  (Tr. 158)  He has never been married.  (Tr. 158-159)  He completed high school and took

some classes at Remington College and Cuyahoga Community College.  (Tr. 344)  He testified

that he has never attempted work.  (Tr. 36)

### B.    Medical & Opinion Evidence

The relevant medical and opinion evidence is summarized herein.[2]

#### 1.    Dr. Pickholtz – Consultative Examiner

On October 12, 2009, Gore underwent a consultative examination by psychologist

Herschel Pickholtz, Ed.D.  (Tr. 294-301)  Dr. Pickholtz conducted a clinical interview and

administered a Weschler Adult Intelligence Scale-Fourth Edition IQ test ("WAIS-IV") to assess

Gore's overall levels of intellectual functioning.  (Id.)  The WAIS-IV is reported as five scores:

verbal comprehension, working memory, perpetual reasoning, processing speed, and full scale.

Gore received a full scale IQ score of 43, falling within the extremely low range of functioning.

(Tr. 299)  Gore scored 52 in verbal comprehension and 50 in the remaining categories.  (Id.)  Dr.

Pickholtz stated that Gore's "true levels of intelligence are felt to fall at least within the upper

end of the borderline range" and concluded that Gore's scores "represent[ed] malingering" (Id.)

---

[2] Gore only challenges certain of the ALJ's findings with respect to his intellectual impairment.
Accordingly, only the medical and opinion evidence relating to that impairment is summarized herein.

Dr. Pickholtz also stated:

> Based upon the responses to these mental operations and the description of his daily
> living activities the true estimates levels of intelligence fall within at least borderline
> range.  There was a real discrepancy between the responses to the evaluation and the
> quality and quantity of his daily living activities, pre morbid levels of intellectual
> functioning in accordance with prior levels of academic achievement, school placement,
> group testing in jail, work history and at least a 6th grade reading level.

As to Gore's work-related mental abilities, Dr. Pickholtz opined that Gore was only mildly

impaired in his activities of daily living, ability to relate to fellow workers and supervisors,

ability to stand the stress and pressures of day-to-day work, and ability to perform simple,

repetitive tasks.  (Tr. 300)

## 2.    Dr. House – Consultative Examiner

On February 17, 2012, Gore again submitted to a consultative examination.  This time,

Gore met with psychologist David V. House, Ph.D.  (Tr. 343-350)  Dr. House diagnosed Gore

with Posttraumatic Stress Disorder; Mood Disorder, NOS; and Personality Disorder, NOS with

at least some Antisocial Features.  (Tr. 348)   He assigned a GAF score of 45, "based on what

appear to be relatively frequent panic attacks and some recent thoughts of death and serious

impairment in terms of employability."  (Tr. 350)  Dr. House stated that Gore's "emotional

resources and coping skills generally…are reduced and he would be a detriment to a work

environment."  (Tr. 349)  Dr. House also stated that although Gore presented as "somewhat

friendly" based on his "lengthy history of difficulty in terms of legal interactions and poor

decision making" he would have "difficulty consistently getting along in a work environment

with supervisors and coworkers."  (Id.)  Dr. House further opined that Gore demonstrates "some

deficits" in concentration and attention and exhibits "vague awareness" of remote memory.  (Id.)

### 3. Dr. Faust – Consultative Examiner

On August 17, 2012, Gore submitted to a third consultative examination.  Dr. Michael
Faust, Ph.D. conducted that examination and diagnosed Gore with Cannabis Dependence (with
reported non-use since June 2011) and Personality Disorder NOS with Antisocial and
Amotivational Traits.  (Tr. 356)  Dr. Faust assigned Gore a GAF of 80, indicating transient of
absent psychological symptoms.  (Id.)  Dr. Faust reported that Gore appeared uninterested and
unengaged in the examination, although he answered all questions asked of him and attended to
the conversation well.  (Id.)  Based on clinical observations and testing, Dr. Faust estimated that
Gore functioned in the low average to average range of intelligence.  (Id.)  He noted that Gore
filled out his history form independently and without difficulty.  (Id.)  Dr. Faust opined that Gore
would have no limitations in any of his work-related mental abilities.  (Tr. 356-57)

### 4. Dr. Katz – State Agency Reviewing Psychologist

On November 5, 2009, state agency reviewing psychologist, Bonnie Katz, Ph.D.,
reviewed Gore's records and completed a mental residual functional capacity assessment
("RFCA") and a psychiatric review technique ("PRT").  (Tr. 302-319)  Dr. Katz reviewed
several listings, including Listing 12.05.  (Tr. 302)   Dr. Katz stated that Gore has borderline
intellectual functioning and determined that Gore does not meet Listing 12.05.  (Tr. 306)   She
opined that Gore had mild difficulties in social functioning and maintaining concentration,
persistence, or pace, as well as moderate difficulties in activities of daily living.  (Tr. 312)   Dr.
Katz ultimately determined that Gore had the mental residual functional capacity to understand,
remember, and carryout simple and somewhat complex tasks; make simple decisions; relate to
coworkers and supervisors and the public on a superficial basis; and deal with occasional
changes in routine.  (Tr. 319)  The ALJ made no mention of Dr. Katz's conclusions in her

4

decision.

### 5.    Dr. Lewin & Dr. Tangeman – State Agency Reviewing Psychologists

State agency reviewing psychologists, Caroline Lewin, Ph.D. and Paul Tangeman, Ph.D., reviewed Gore's file on September 8, 2012, and January 30, 2013, respectively.  (Tr. 66-76, 80-90).  Dr. Lewin and Dr. Tangeman both opined that Gore has mild limitations in his activities of daily living and maintaining social functioning, as well as moderate limitations in maintaining concentration, persistence, or pace.  (Tr. 71, 85)  They also both agreed that Gore retained the residual functional capacity to complete 1-2 step tasks in a routine/static work environment where changes could be explained.  (Tr. 75-76, 89-90).

### D.    Testimonial Evidence

### 1.    Mr. Gore's Testimony

Gore testified before the ALJ at a hearing on May 22, 2014.  (Tr. 26-51)  At the outset, Gore's counsel requested that the ALJ order another IQ test because Gore's test results were determined to be invalid.  (Tr. 29)  Gore's counsel stated that his client was "never …told that if he didn't set forth a good effort on his IQ test that they would be invalid and could be used against him later on."  (Id.)  The administrative law judge denied that request.  (Id.)

The ALJ questioned Gore as to whether his previous incarceration was pursuant to a plea agreement.  (Tr. 30-31)  Gore replied in the affirmative.  (Tr. 31)  The ALJ stated that if Gore was able to enter a plea that was approved by the court that was a strong indicator that he was able to understand information related to the important topic of his liberty would be affected. The ALJ characterized this as "strong and persuasive evidence" regarding his claimed learning disability.  (Tr. 32)

The ALJ then questioned Gore in regards to his 2009 consultative exam with Dr.

Pickholtz.  (Tr. 33-34)  The ALJ asked if Dr. Pickholtz ever indicated that failure to put forth a good effort on the IQ test would result in a negative finding or inference.  (Tr. 34)  Gore answered "no."  (Id.)  The ALJ then asked (1) if Dr. Pickholtz suggested he try better; (2) if Gore did the best job he could; (3) if Dr. Pickholtz informed Gore that the job he was doing was not good enough; and (4) if Gore tried to the best of his ability.  (Id.)  Gore answered "yes" to all four questions.  (Id.)  Gore testified that he could not read, multiply, or divide.  (Tr. 35)

Gore stated that he never previously tried to work and could not think of a reason why he has not attempted work in the past.  (Tr. 36)  He testified that his attention span prevented him from working.  (Id.)

### 2.    Medical Expert's Testimony

Medical Expert, Dr. Martin R. Macklin, also testified at the hearing.  (Tr. 37-43)  Dr. Macklin stated that he reviewed Gore's medical records, including his psychological examinations.  (Tr. 37-38)  Dr. Macklin testified that the record supported Gore's diagnosis of borderline intellectual functioning.  (Tr. 38)  The ALJ questioned Dr. Macklin in regards to Dr. Pickholtz's determination of malingering.  (Tr. 39)  Dr. Macklin explained that an IQ score of 43 or 50 is generally viewed as an individual who is functioning intellectually as a 7 or 8 year old. (Tr. 39-40)  Dr. Macklin stated that Dr. Pickholtz's representation that Gore's scores indicate malingering was supported by the following evidence in the record: Gore's reading at a 6.6. grade level, his prior IQ score of 71 while in prison, and the fact that Gore does not function like a 7 or 8 year old.  (Tr. 40)  Dr. Macklin also agreed with the diagnosis of personality disorder with antisocial traits, stating that it was an automatic diagnosis for someone who has been in prison.  (Id.)  Dr. Macklin was also questioned about the GAMA IQ test that Gore was administered in prison but Dr. Macklin stated that he was not familiar with that test.  (Tr. 42)

6

### 3.      Vocational Expert's Testimony

Vocational Expert ("VE"), Dr. Robert A. Mosley, was the last person to testify at the

hearing.  (Tr. 44-50).  Dr. Mosley testified that a hypothetical individual of the same age,

education, and work history as Gore and with the limitations outlined by the ALJ (light

exertional work with a stand or walk a maximum of two hours in an eight-hour day; should not

use his left foot for a left foot control; never climb any ladders, ropes or scaffolds, can

occasionally climb stairs and ramps and can occasionally kneel, crouch and crawl; frequently

balance and stoop; should avoid exposure to jobs that will occasionally expose the individual to

unprotected heights and uneven terrain; who can understand, remember and carry out

instructions consistent with performing work at SVP 1 or SVP 2 levels or work that is further

defined as work that can be learned within 30 days or work and that can be learned with a short

demonstration; and who can interact with the general public, co-workers and supervisors to

speak, signal, take instructions and carry out instructions, and is limited to routine-type changes

in the workplace setting) could perform work as an inspector and hand packager (1,500 local

jobs; 6,000 Ohio jobs; 100,000 national jobs); final assembler (1,800 local jobs; 6,000 Ohio jobs;

northeast Ohio, 150,000 national jobs); and table worker or sorter (1,500 local jobs; 5,000 Ohio

jobs; 100,000 national jobs).  (Tr. 44-46)  The VE stated that those same listed jobs could also be

performed if the hypothetical individual had an additional limitation which reduced his

interaction with the general public (but no limits on interacting with co-workers and supervisors,

to speak, signal, take instructions and carry out instructions).  (Tr. 46)

Next, Gore's counsel questioned the VE as to whether his answer to the final hypothetical

question would change if the individual were in special education classes from 6th through 12th

grade but did graduate.  (Tr. 47)  The VE stated that would not change his position unless it

affected the individual's ability to respond to simple or complex instructions. (Id.) The VE further stated that education by itself does not fit or correlate into the work history from a functional point of view without knowing what the demonstrated abilities are associated with that educational change. (Tr. 47)

## IV.    Standard for Disability

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[3]....

42 U.S.C. § 423(d)(2)(A).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least

---

[3] "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423 (d)(2)(A).

twelve months, and his impairment meets or equals a listed impairment,[13] claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.R.F. §§ 404.1520, 416.920; *Bowen v. Yuckert,* 482 U.S. 137, 140-142 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.* 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC and vocational factors to perform work available in the national economy. *Id.*

## IV. The ALJ's Decision

The ALJ issued a decision on August 1, 2014. A summary of her findings is as follows:

1. Gore had not engaged in substantial gainful activity since June 8, 2012, the application date.[4] (Tr. 13)

2. Gore has the following severe impairments: borderline intellectual functioning; personality disorder; and a history of fractured leg which healed without complications. (Tr. 13)

3. Gore does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 13)

4. Gore has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 416.967(b) and meaning he can stand/walk for four hours; no usage of foot control on left; never climb ladders, ropes, scaffolds; occasionally climb stairs and ramps; occasionally kneel, crouch and crawl; frequently balance and stoop; avoid exposure to jobs that up to occasionally will expose an individual to unprotected heights and uneven terrain; mentally can understand, remember and carry-out instructions consistent with

---

[4] The ALJ mistakenly listed June 8, 2012, as Gore's application date. However, the application date was June 18, 2012. June 8, 2012, is Gore's alleged disability onset date. (Tr. 158, 227)

performing work at SVP1or SVP2 levels or work that is further defined as work that can be learned within 30 days or work that can be learned with a short demonstration; can maintain concentration, persistence and pace over a normal work day and work week for work that is SVP1 or SVP2 levels or work that is further defined as work that can be learned within 30 days or work that can be learned with a short demonstration; is limited to occasionally interacting with the general public and no limits on interacting with coworkers and supervisors to speak, signal, take instructions and carry out instructions; and is limited to routine type changes in work environment.  (Tr. 15)

5. Gore has no past relevant work.  (Tr. 19)

6. Gore was born on July 10, 1986 and was 25 years old, which is defined as a younger individual age 18-49, on the date the application was filed.  (Tr. 19)

7. Gore has at least a high school education and is able to communicate in English.  (Tr. 19)

8. Transferability of job skills is not material because Gore does not have any past relevant work.  (Tr. 20)

9. Considering Gore's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (Tr. 20)

Based on these findings, the ALJ determined that Gore had not been under a disability since June 8, 2012,[5] the date the application was filed.  (Tr. 20)

## VI.    Law & Analysis

### A.    Standard of Review

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision.");

_____

[5] As noted above, the ALJ mistakenly listed June 8, 2012, as the application date, rather than June 18, 2012.  See Application (Tr. 158, 227)

*Kinsella v. Schweiker,* 708 F.2d  1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

The Act provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §§ 405(g) and 1383(c)(3).  The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter,* 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen,* 800 F.2d 535,545 (6th Cir. 1986); *see also Her v. Comm'r of Soc. Sec.,* 203 F.3d 288, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached." *See Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997).  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen,* 800 F.2d at 545 (*citing Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir. 1984).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the court must determine whether proper legal standards were applied.  Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal.  *See e.g. White v. Comm'r of Soc. Sec.* 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits

11

or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue,* 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996); *accord Shrader v. Astrue,* No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue,* No. 1:10-cv-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue,* No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).

**B.    The ALJ's Step 3 Analysis is not contrary to law and is supported by substantial evidence**

Gore argues that the ALJ's Step 3 finding is contrary to law and/or not based on substantial evidence.  ECF Doc. No. 10, Page ID# 508.  More specifically, Gore asserts that the ALJ's Step 3 decision is invalid because:  (1) the ALJ failed to address whether Gore met Listing 12.05; (2) the ALJ failed to follow SSA's Hearings, Appeals, and Litigation Law Manual ("HALLEX") I-2-52-4[6] which provides a procedure for dealing with a claimant who refuses to undergo a consultative exam or test; (3) the ALJ had a duty to order an additional consultative exam for IQ testing and did not do so; and (4) the ALJ substituted her judgment for trained medical professionals.  Id., Page ID# 508-514.  The Commissioner counters that the ALJ's

---

[6] Gore's briefing references HALLEX I-2-524, a code which does not appear in HALLEX.  The Commissioner responded with references to HALLEX I-2-52-4, which appears to be the HALLEX code to which Gore was referring.

finding that Gore did not meet or medically equal Listing 12.05 was supported by substantial evidence. ECF Doc. No. 12, Page ID# 526-531. The Commissioner also asserts that HALLEX I-2-52-4 does not apply to Gore and that the ALJ did not abuse her discretion by declining to order another intelligence test at the government's expense. Id., Page ID# 532-536. Finally, the Commissioner contends that the ALJ did not substitute her judgment for that of the medical professionals. Id., Page ID# 536.

### 1. Listing 12.05

Gore first contends that the ALJ's failure to consider Listing 12.05 is contrary to law. Gore contends that when an ALJ is presented with an IQ score 70 or below, the ALJ must "articulate reasons why such a score does or does not give rise to a finding of disability under the listing." ECF Doc. No. 10, Page ID# 509. Listing 12.05 is a listing for the mental disorder of intellectual disability. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.05. One prerequisite to the evaluation of disability on the basis of a mental disorder is that there must be "documentation of a medically determinable impairment." Id., § 12.00(A). If a medically determinable impairment is found, then it must be evaluated under the relevant listing.

At the time of Gore's decision,[7] Listing 12.05 contained two parts. The first part, which is referred to as the "diagnostic definition," required: 1) significantly sub-average general intellectual functioning; 2) deficits in adaptive functioning; and 3) onset before age twenty-two. Id., § 12.05; *See also Hayes v. Comm'r of Soc. Sec.,* 357 Fed.Appx. 672, 675 (6th Cir.2009). The second part, which is referred to as the "severity criteria" of subsection C, required: 1) a valid

---

[7] Federal courts will review the Commissioner's final decisions using the rule that was in effect at the time we issued the decision. See https://www.federalregister.gov/documents/2016/07/01/2016-15306/revised-medical-criteria-for-evaluating-neurological-disorders (last visited October 21, 2016).

verbal, performance, or full scale IQ of 60 through 70; and 2) a physical or other mental impairment imposing an additional and significant work-related limitation or function. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C); *Sheeks v. Comm'r of Soc. Sec.,* 544 Fed.Appx. 639, 641 (6th Cir.2013).

The relevant Social Security regulations require the ALJ to find a claimant disabled if he meets a listing. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Sullivan v. Zebley,* 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). Yet, neither the listings nor the Sixth Circuit requires the ALJ to "address every listing" or "to discuss listings that the applicant clearly does not meet." *Sheeks,* 544 Fed.Appx. at 641; *see also Kornecky v. Comm'r of Soc. Sec.,* 167 Fed.Appx. 496, 507–08 (6th Cir.2006) ( "While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that[ ] 'an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.' ") (*quoting Loral Defense Sys.-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir.1999)). Thus, the ALJ was not necessarily required to discuss Listing 12.05.

Gore's contention, that the ALJ must "articulate reasons why such a score does or does not give rise to a finding of disability under the listing" when IQ score is 70 or below, is faulty in two ways. Factually, Gore did not present a valid score below 70. As he acknowledges, his 2009 WAIS-IV IQ test results were found to be invalid. ECF Doc. No. 10, Page ID# 505. Gore also took the General Ability Measure for Adults ("GAMA") IQ test administered in a correctional facility and received a score of 71. Thus, Gore has not presented a valid IQ score under 70. Gore's contention is also legally untenable.

Although the ALJ must explain his step three finding, the claimant bears the burden of proving she meets a Listed Impairment at step three. *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388,

14

391 (6th Cir.1999*)*. Consistent with this principle, the Sixth Circuit has held that remand is only appropriate when the record raises a "substantial question" over whether a claimant meets a listing. *Smith-Johnson v. Comm'r of Soc. Sec*., 579 F. App'x 426, 432 (6th Cir. 2014); *Sheeks v. Comm'r of Soc. Sec.,* 544 F. App'x 639, 641–42 (6th Cir.2013) (*citing Abbot v. Sullivan,* 905 F.2d 918, 925 (6th Cir.1990)); *See also Hobbs v. Comm'r of Soc. Sec*., No. 1:13 CV 1411, 2014 WL 4545921, at *4 (N.D. Ohio Sept. 12, 2014) ("Two decisions of the Sixth Circuit …clarify the holding in *Abbott* to now be that an ALJ is required to consider Listing 12.05 only where the record raises a substantial question as to whether [the claimant] could qualify as disabled under that listing.")(internal quotations omitted).  A claimant must do more than point to evidence on which the ALJ could have based his finding to raise a "substantial question" as to whether he has satisfied a listing.  *Sheeks,* 544 Fed.Appx. at 641–42 (finding claimant did not raise a substantial question as to satisfying the listing for intellectual disability where the ALJ's finding of borderline intellectual functioning simply left open the question of whether he meets a listing and where claimant pointed to only a few pieces of tenuous evidence addressing the listing). Rather, the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing. *See Sullivan,* 493 U.S. at 530, 110 S.Ct. 885 ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of the criteria, no matter how severely, does not qualify."); *Foster v. Halter,* 279 F.3d 348, 354–55 (6th Cir. 2001) (claimant must satisfy the diagnostic description *and* one of the four sets of criteria).  Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at step three.

Here, Gore fails to raise a substantial question as to whether he satisfied Listing 12.05. Like the claimant in *Sheeks*, Gore presents only a tenuous case for meeting Listing 12.05.  He

15

states that he was placed in special education classes, never received any other type of training, graduated with a 1.887 GPA, and ranked 140 out of 191 students.  ECF Doc. No. 10, Page ID# 509.  Gore also points to his 2009 IQ score which was invalidated (a point which Gore does not dispute) and his GAMA IQ score of 71.  Id.  In order to meet Listing 12.05, Gore must present a *valid* verbal, performance, or full scale IQ of 60 through 70.  As explained earlier, Gore has not done so.  Furthermore, Gore has not pointed to any evidence that he meets the diagnostic definition of the listing [i.e., 1) significantly sub-average general intellectual functioning; 2) deficits in adaptive functioning; and 3) onset before age twenty-two].

A substantial question about whether Gore meets the listing requires more than what Gore has put forth here.  See *Sheeks*, 544 Fed.Appx. at 642 (evidence of borderline intellectual functioning, attendance in special education classes, and failure to finish high school did not raise a substantial question about whether claimant met Listing 12.05 and, thus, the ALJ did not commit reversible error by failing to discuss the listing); See also *Matejka v. Comm'r of Soc. Sec. Admin.,* No. 1:13-CV-1933, 2014 WL 3197437, at *10 (N.D. Ohio July 8, 2014) (finding the ALJ did not commit error by failing to discuss a listing where plaintiff presented only a tenuous case for meeting the listing and did "not flag any record evidence suggesting that she meets the other required criteria of the listing.")  Since Gore fails to raise a substantial question about whether he meets Listing 12.05, the ALJ did not commit reversible error in failing to discuss the listing.[8]

Additionally, the ALJ did not err by failing to analyze listing compliance at step three because she adequately discussed the medical evidence that undermined conclusions of the

---

[8] It might have been preferable practice for the ALJ expressly to discuss her conclusion that Gore's claim regarding Listing 12.05 had not been proven, inasmuch as Gore's counsel expressly made that claim during the hearing.  (Tr. 29)

listing level impairment in a subsequent section of his decision. The ALJ noted Gore's diagnosis of Borderline Intellectual Functioning ("BIF") and his enrollment in special education classes but countered that information with the following evidence: (1) Gore received A's, B's, C's, D's, and F's, (2) he passed the Ohio Proficiency Test; (3) he graduated from high school, (4) he briefly attended classes at Remington College and Cuyahoga Community College. (Tr. 16) The ALJ also gave weight to medical opinions which consistently diagnosed Gore with BIF, rather than an Intellectual Disability. Borderline intelligence, by definition, is a "less severe diagnosis" than intellectual disability. *Justice v. Comm'r Soc. Sec. Admin*., 515 F. App'x 583, 587 (6th Cir. 2013); *See also Cooper v. Comm'r of Soc. Sec*., 217 Fed. Appx. 450, * 452 (6th Cir. 2007) (drawing a distinction between a diagnosis of intellectual disability and borderline intellectual functioning). While the absence of an intellectual disability diagnosis is not dispositive, it may be considered by an ALJ when determining whether a claimant has proven that he meets the requirements of Listing 12.05. *Id.*; *Brooks v. Astrue,* 2010 U.S. Dist. LEXIS 27583, * 17 (N.D. Ohio 2010).

For all of the above mentioned reasons, the ALJ did not commit reversible error by failing to specifically discuss Listing 12.05. And she did not err in concluding that Gore's impairments did not meet or medically equal the severity required by any section or subsection of the Listings.

### 2. HALLEX I-2-52-4

Next, Gore contends that the ALJ failed to follow HALLEX I-2-25-4. ECF Doc. No. 10, Page ID# 510. HALLEX I-2-52-4 provides that an ALJ must assess whether a claimant who "does not attend or refuses to undergo a consultative exam or test" had "good cause" to do so. 1992 WL 601810. As the Commissioner correctly contends, HALLEX I-2-5-24 does not apply

in Gore's case.  Gore did not refuse to undergo a consultative exam.  In fact, Gore underwent three different consultative exams.  (Tr. 294-01, 343-50, 351-57)   Gore also did not refuse to undergo a test.  Rather, Dr. Pickholtz declared that Gore's IQ score results were invalid based on malingering.  (Tr. 16, 299-00)   Dr. Pickholtz also invalidated the full scale IQ score because of a "real discrepancy" with "the quality and quantity of his daily living activities, pre morbid levels of intellectual functioning in accordance with prior levels of academic achievement, school placement, group testing in jail, work history and at least a 6th grade reading level."  (Tr. 19, 299-00)  HALLEX I-2-5-24 applies to claimants who refuse to undergo or do not attend a consultative exam or test, not those whose IQ tests are found to be invalid due to malingering and discrepancies with other evidence in the record.  Gore cites no law to the contrary.

Moreover, an ALJ's failure to follow the exact procedures set forth in HALLEX is not reversible error by itself.  Rather, a plaintiff must demonstrate that the ALJ's alleged HALLEX violation deprived him of a full or fair administrative hearing or prejudiced him.  *St. Clair v. Astrue,* 2010 WL 3370568, *7 (N.D. Ohio 2010). *See Laddy v. Astrue,* 2012 WL 776551, * 11 (N.D. Ohio 2012).  Plaintiff presents a nebulous argument asserting prejudice based on the ALJ's failure to order a consultative examination for IQ testing.  In order for this Court to consider this argument, the Court would have to liberally construe several things.  First, the Court would have to liberally construe the words "refusal to undergo" testing, to include a claimant who willingly was tested but whose test results were invalidated due to malingering and inconsistency with other evidence.[9]  Even if the court did that, HALLEX I-2-5-24 simply requires that the ALJ inquire into whether the claimant had "good cause" for the "refusal."  Therefore, Gore's

---

[9] Notably, as the Commissioner points out, Gore's argument to this Court – that he "refused" to cooperate – is inconsistent with Gore's hearing testimony that he tried to the best of his ability on the IQ test.  (Tr. 34)

argument asks this court to further conclude that had a good cause inquiry been made, the ALJ would have determined that an additional consultative examination was required.  Gore's argument requests the court to undertake a speculative course that finds no support in the law. Gore has not demonstrated that he was prejudiced by the ALJ's alleged failure to follow HALLEX procedure.

### 3.  Additional Consultative Exam

Gore next contends that the ALJ erred by denying his request to order an additional consultative exam for IQ testing.  ECF Doc. No. 10, Page ID# 511-13.  As Gore concedes, "[t]he Commissioner is not obligated to provide consultative evaluations in all case."  Id. at 512. Instead, Gore represents that the Social Security Regulations provide that "consultative medical examinations *will* be provided 'when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim.' "  Id. at 512-13 citing 20 CFR §404.1519a(b). However, Gore mischaracterizes the language of the regulation.  Section 404.1519a(b) provides that the Commissioner "*may* purchase a consultative examination" in certain cases, such as when the evidence is not sufficient to support a decision.  (Emphasis added.)  Gore's implication that the Commissioner is under a mandatory duty to order a consultative examination is erroneous. Even so, as discussed earlier, the Commissioner ordered and Gore underwent three consultative examinations, one of which included IQ testing.  Gore does not cite any authority for the proposition that an ALJ is required to order successive examinations.  However, Sixth Circuit authority recognizes that an ALJ need not order a successive consultative exam where, as here, the test results were found to be unreliable due to the claimant's own volition.  *Smith v. Comm'r of Soc. Sec.,* 64 F.3d 663 (Table), 1995 WL 469724 at *2 (6th Cir. 1995).

### 4. Substitution of Judgment

Finally, Gore contends that the ALJ improperly substituted her judgment for that of

trained professionals by "opin[ing] that a grade equivalent of 6.6 can be equated to IQ scores."

ECF Doc. No. 10, Page ID# 513.  Plaintiff does not cite to or specify the part of the ALJ decision

to which he refers in his argument.  A review of the ALJ's decision finds no mention of a "6.6,"

but one mention of a 6th grade reading level when the ALJ  quoted from Dr. Pickholtz' opinion.

The ALJ stated that Dr. Pickholtz "diagnosed claimant with borderline intellectual functioning

and explained the basis for this diagnosis:

> Based upon the responses to these mental operations and the description of his daily
> living activities the true estimates levels of intelligence fall within at least borderline
> range.  There was a real discrepancy between the responses to the evaluation and the
> quality and quantity of his daily living activities, pre morbid levels of intellectual
> functioning in accordance with prior levels of academic achievement, school placement,
> group testing in jail, work history and at least a 6th grade reading level.

(Tr. 19)  In quoting to Dr. Pickholtz' report, the ALJ did not improperly substitute her judgment

for that a trained professional.  Gore's argument to the contrary is without merit.

Though not argued by Gore, the undersigned finds troubling the ALJ's personal

evaluation of the psychological significance of a guilty plea entered by Gore earlier in life.  As

noted above, the ALJ mentioned at the hearing that she found the entry of plea of guilty "strong

and persuasive evidence" regarding Gore's capacity to understand information. (Tr. 32)  The

ALJ doubled down on this personal psychological analysis in her decision when she stated: "As I

stated on the record, I consider evidence that a Court found the claimant competent to stand trial

as significant and persuasive weight that the claimant has the mental capacity to perform

unskilled work because it requires greater mental ability to assist an attorney in your defense and

to be able to make decisions about the most important right you have – the right to be free and

not incarcerated." (Tr. 18)  Putting aside the utter unintelligibility of the foregoing sentence from a grammatical standpoint, the court finds the unsupported medical conclusion of the ALJ to be absurd.  Conclusory lay opinions have no place in an ALJ decision on a Social Security disability claim.

Though the ALJ plainly erred in expressing her unsupported medical views on the psychological significance of Gore having been found competent to stand trial, the court should find the error to be harmless.  First, Gore has not argued the point.  Second, for the reasons stated above, even when this improper conclusion is excised from the ALJ's decision, the balance of her analysis can be upheld on the ground that it is supported by substantial evidence.

## VII.  Conclusion

In summary, the undersigned finds that Gore has not demonstrated a basis upon which to reverse or remand the Commissioner's decision.  For these reasons, I recommend that the final decision of the Commissioner be AFFIRMED, pursuant to 42 U.S.C. § 405(g).

Dated: November 15, 2016

Thomas M. Parker
United States Magistrate Judge

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).**