PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| LARRY GORE, | ) | |
| | ) | CASE NO. 1:15CV2581 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** |


An Administrative Law Judge ("ALJ") denied Plaintiff Larry Gore's claim for

Supplemental Security Income ("SSI") benefits after a hearing.  That decision became the final

determination of the Commissioner of Social Security when the Appeals Council denied the

request to review the ALJ's decision.  Plaintiff sought judicial review of the Commissioner's

decision, and the Court referred the case to Magistrate Judge Thomas M. Parker for preparation

of a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.2(b)(1).  After

both parties filed briefs, the magistrate judge submitted a report (ECF No. 15) recommending

that the decision of the Commissioner be affirmed as supported by substantial evidence.  Plaintiff

filed an Objection to the Report and Recommendation.  ECF No. 17.  Defendant filed a

Response.  ECF No. 18.  For the reasons that follow, the Court overrules Plaintiff's Objection

and adopts the magistrate judge's Report and Recommendation.

(1:15CV2581)

# I.

When a magistrate judge submits a Report and Recommendation, the Court is required to conduct a *de novo* review of the portions of the Report and Recommendation to which an appropriate objection has been made.  28 U.S.C. § 636(b).  Objections must be specific, not general, in order to focus the court's attention upon contentious issues.  *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  The primary issue then becomes whether substantial evidence supports the Commissioner's decision.  The Court's review of the Commissioner's decision is limited to determining whether substantial evidence, viewing the record as a whole, supports the findings of the ALJ.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978); *Bartyzel v. Commr of Soc. Sec.*, 74 F. App'x 515, 522–23 (6th Cir. 2003).  Substantial evidence is more than a mere scintilla of evidence, but less than a preponderance.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Besaw v. Sec'y of Health and Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (per curiam).

If substantial evidence supports the Commissioner's decision, a reviewing court must affirm the decision even if it would decide the matter differently.  *Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam)).  Moreover, the decision must be affirmed even if substantial evidence would also support the opposite conclusion.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).  This "standard allows considerable latitude to administrative

(1:15CV2581)

decision makers.  It presupposes that there is a zone of choice within which the decision[-]makers can decide either way, without interference by the courts.  An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Id.* (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).  In determining, however, whether substantial evidence supports the ALJ's findings in the instant matter, the court must examine the record as a whole and take into account what fairly detracts from its weight.  *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court must also consider whether the Commissioner employed the proper legal standards.  *Queen City Home Health Care Co. v. Sullivan*, 978 F.2d 236, 243 (6th Cir. 1992).

        To establish disability under the Social Security Act, a claimant must show that he is unable to engage in substantial activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months."  *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The claimant's impairment must prevent him from doing his previous work, as well as any other work existing in significant numbers in the national economy.  42 U.S.C. § 423(d)(2)(A).

        In order for the Commissioner to find that a claimant suffers from a disability for which he should receive benefits, the claimant must be unable to engage in any substantial gainful activity due to the existence of a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *Colvin v. Barnhart*, 475 F.3d 727,

3

(1:15CV2581)

730 (6th Cir. 2007).  Under 42 U.S.C. § 1381, disabled individuals who meet certain income and

resources requirements are entitled to SSI benefits.  20 C.F.R. §§ 416.1100 and 416.1201.

## II.

Plaintiff objects to the magistrate judge's finding that the ALJ did not err in denying

Plaintiff's request to order an additional consultative examination to test Plaintiff's intelligence

quotient ("IQ").  *See* ECF No. 17 at PageID #: 576; ECF No. 15 at PageID #: 572.  The Court

reviews the objection *de novo*.

Plaintiff contends that "there is no evidence of record that [Plaintiff was] warned that his

failure to cooperate with IQ testing would result in an adverse decision."  ECF No. 17 at PageID

#: 582.  Plaintiff argues that the failure to warn is inapposite because of the "remedial nature of

the Social Security Act," and the ALJ's "duty to investigate the facts and develop the record

independent of the claimant or his counsel."  *Id.*  Plaintiff also contends that the ALJ's rationale

for denying Plaintiff's motion for additional IQ testing was contrary to law, had no legal basis,

and was subjective.  *Id.*  Therefore, Plaintiff avers that he was prejudiced by the ALJ's abuse of

discretion.  *Id.*

Plaintiffs' arguments are unavailing.  At the onset of the hearing before the ALJ, counsel

for Plaintiff moved the ALJ to order the re-evaluation of Plaintiff's IQ.  *See* Hearing Tr., ECF

No. 9 at PageID #: 81-82.  As grounds for the request, counsel for Plaintiff argued that: (1) the

prior test results were invalid; (2) Plaintiff was never warned that his failure to put forth good

effort could result in invalid test results; and (3) Plaintiff was never warned that the invalid test

results could be used against him in future proceedings.  *Id.* at PageID #: 82.

4

(1:15CV2581)

The ALJ denied Plaintiff's motion.  *Id.*  As grounds for the denial, the ALJ explained her rationale as follows:

> When the claimant applies for Disability, he is expected and he agrees that he will cooperate and that he will provide Social Security with all information. He is also obligated by law to provide true information to the Agency in further evidence of his application. So that information is provided to the claimant and if he does not provide that information, then I'm not going to give him a second opportunity to fail in his obligations.

*Id.* at PageID #: 82-83.

The Social Security Act provides that the Commissioner of Social Security shall not make an initial disability determination without making "every reasonable effort to ensure . . . in any case where there is evidence which indicates the existence of a mental impairment, that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment." 42 U.S.C. § 421(h).  In furtherance of this mandate, the Commissioner may decide to order a consultative examination if it cannot obtain needed information from a claimant's medical sources.  20 C.F.R. §404.1519a(b).  The Commissioner may also order a consultative examination when the Commissioner is trying to "resolve inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the Commissioner] to make a determination or decision on [the] claim." *Id.*  In which case, an ALJ is vested with the discretion to determine whether such additional consultative examination is necessary. *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010) (citing *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) ("An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary. ")). *See also*

5

(1:15CV2581)

*Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination."); 20 C.F.R. §§ 404.1517, 416.917.

Moreover, although an ALJ has the obligation to develop the facts and ensure that each claimant receives a full and fair hearing, the ALJ must not assume the role of counsel in doing so.  *See Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983). Ultimately, "[t]he burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw*, 803 F.2d at 214 (rejecting plaintiff's argument that she had been denied a full and fair hearing and concluding that the ALJ's duty is triggered only "if the existing medical sources [in the record] do not contain sufficient evidence to make a [disability] determination").

It is well-established that IQ test results may provide data that help verify the presence and extent of an intellectual disability, mental disorder, or compromise in cognitive functioning. *See* § 42:145 Intellectual disability—Use of intelligence tests, 3 Soc. Sec. Law & Prac. § 42:145 (Westlaw 2016).  However, the Sixth Circuit has held that when the circumstances indicate that a claimant has been uncooperative and has contributed to invalid IQ test results of his own volition, an ALJ is not required to have a claimant undergo successive consultative examinations. *Smith v. Comm'r of Soc. Sec.*, 64 F.3d 663 (Table), 1995 WL 469724 at *2 (6th Cir. 1995) ("the ALJ was not required to continue to have [claimant] undergo successive consultative

6

(1:15CV2581)

[psychological] examinations until [claimant] decided to cooperate and provide a valid test result.").

Viewing the record as a whole, substantial evidence supports the ALJ's decision to deny Plaintiff's motion for an additional consultative examination to test Plaintiff's IQ. Plaintiff underwent at least three consultative examinations at the request of the State of Ohio Division/Bureau of Disability Determination. *See* Tr. - Ex. No. 2F Confidential Psychological Report, ECF No. 9 at PageID #: 347-54; Tr. - Ex. No. 6F ***Confidential Report*** Psychological Evaluation, ECF No. 9 at PageID #: 396-403; Tr. - Ex. No. 7F Disability Assessment Report, ECF No. 9 at PageID #: 404-11. During each examination, the examining psychologist indicated that Plaintiff was made aware of the purpose of the psychological evaluation and that a report would be submitted to the state agency. *See* ECF No. 9 at PageID #: 347, 396, 404.

The consultative examination reports indicate that at least two IQ test results were administered, or relied on, by examining psychologists at different times during the Commissioner's evaluation of Plaintiff's application for SSI benefits. Plaintiff's first examining psychologist, Dr. Herschel Pickholtz, Ed.D., conducted a clinical interview, mental status evaluation, and administered a Weschler Adult Intelligence Scale-Fourth Edition IQ test ("WAIS-IV IQ test") to assess Plaintiff's overall levels of intellectual functioning. *See* Tr. - Ex. No. 2F Confidential Psychological Report, ECF No. 9 at PageID #: 347-54. Ultimately, Dr. Pickholtz determined that Plaintiff's IQ test results were invalid. The ALJ "accept[ed] the invalidation of [Plaintiff's WAIS-IV IQ] test scores" on grounds that "the [examining]

7

(1:15CV2581)

psychologist fully substantiated his reasoning" for finding the test score invalid.  *See* Notice of

Decision, ECF No. 9 at PageID #: 69.  The test results were determined to be invalid, in part,

because Plaintiff lied and fabricated information during the consultative examination.  *Id.* at

PageID #: 353.  Plaintiff was diagnosed with, among other things, malingering.[1]  *Id.* at PageID #:

354.  The examining psychologist concluded that "[t]he true levels of [Plaintiff's] intelligence are

felt to fall at least within the upper end of the borderline range."  *Id.* at PageID #: 352.

Plaintiff's second examining psychologist, Dr. David V. House, Ph.D., did not conduct an

independent psychometric test of Plaintiff's IQ during his clinical interview and mental status

examination of Plaintiff.  *See* Tr. - Ex. No. 6F ***Confidential Report*** Psychological

Evaluation, ECF No. 9 at PageID #: 396-403.  Because the WAIS IV-IQ test result was invalid,

---

[1]
> The essential feature of Malingering is the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as avoiding military duty, avoiding work, obtaining financial compensation, evading criminal prosecution, or obtaining drugs.
>
> Malingering should be strongly suspected if any combination of the following is noted: [(1)] Medicolegal context of presentation (e.g., the person is referred by an attorney to the clinician for examination)[; (2)] Marked discrepancy between the person's claimed stress or disability and the objective findings[; (3)] Lack of cooperation during the diagnostic evaluation and in complying with the prescribed treatment regimen[; or (4)] The presence of Antisocial Personality Disorder.

Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 739 (4th ed., text rev., 2000).

8

(1:15CV2581)

the second examining psychologist relied on a 2009 General Ability Measure for Adults ("GAMA") Profile Report for Plaintiff's IQ score. *See* Ex. 1F - Prison Records, ECF No. 9 at PageID #: 336-43. The second examining psychologist concluded that Plaintiff's GAMA IQ score "plac[ed] him in the borderline range of intelligence" and, therefore, diagnosed Plaintiff with borderline intellectual functioning. *See* Tr. - Ex. No. 6F ***Confidential Report*** Psychological Evaluation, ECF No. 9 at PageID #: 401. Thus, confirming the findings and diagnosis of the first examining psychologist.

      Plaintiff's third examining psychologist, Dr. Michael Faust, Ph.D., conducted a clinical interview and psychological evaluation "to assess Plaintiff's mental status and the existence of any psychological condition that would impair [Plaintiff's] ability to function on a daily basis and in an employment setting." *See* Tr. - Ex. No. 7F - Disability Assessment Report, ECF No. 9 at PageID #: 404-11. Dr. Faust also did not conduct an independent psychometric test of Plaintiff's IQ during the examination. Instead, he based his assessment "on information gained from" Plaintiff without consulting any "other sources of collateral information." *Id.* During the consultative examination, Plaintiff told the examining psychologist that his reason for disability was "that he has a prison record." *Id.* When asked "why he feels unable to work at this time," Plaintiff responded: "Because of my [prison] record." *Id.* at PageID #: 405. The third examining psychologist also reported that Plaintiff was: "disinterested during the interview[;] text[ing] on his phone while [the examining psychologist] attempted to engage him[;] annoyed when asked to elaborate[;] and [] gave curt, minimal responses." *Id.* at PageID #: 407. The third examining psychologist concluded that Plaintiff had "transient or [absent psychological] symptoms" and

9

(1:15CV2581)

was "functioning within the low average to average range of intellectual functioning, based on conversational speech and educational history." *Id.* at PageID #: 408-09.

In reaching her decision, the ALJ gave some assignment of weight to each of these consultative examinations and explained her reasons for the varying weights assigned.  *Id.* at PageID #: 69-72.  Plaintiff concedes that "the Commissioner is not obligated to provide consultative evaluations in all cases."  ECF No. 10 at PageID #: 512.  Moreover, there is substantial evidence to support the ALJ's rationale that Plaintiff failed in his obligation to provide truthful information during each consultative examination by lying, fabricating information, and not fully engaging the examining psychologists.  Accordingly, the Court finds that the ALJ did not abuse her discretion by denying Plaintiff's motion for an additional consultative examination to test Plaintiff's IQ.

### III.

For the reasons discussed above, Plaintiff's Objection (ECF No. 17) is overruled.  The Report and Recommendation is adopted.  The decision of the Commissioner is affirmed.


IT IS SO ORDERED.


 February 17, 2017              /s/ Benita Y. Pearson
Date                                       Benita Y. Pearson
                                               United States District Judge

10